## DANIELS *v.* MORGAN.

*(Circuit Court, D. Massachusetts. May 29, 1890.)*

PATENTS FOR INVENTIONS—WHO ENTITLED TO—EVIDENCE.

> On application of two claimants for letters patent for the same invention, it appeared that complainant had the plan of the invention in mind for some years, and was the first to embody it in a drawing; that afterwards two drawings were made by respondent containing modifications of the proposed machine, and finally a machine was constructed and put in successful operation by him. Complainant testified that he showed respondent a plan of the work, and respondent told him to go ahead and make a drawing in accordance with it. In regard to the same drawing, respondent testified that it was made by his direction, and in accordance with his suggestions. At the time respondent was superintendent, and complainant an employe under him, in a manufacturing company, the work of which suggested the invention. *Held*, that complainant was entitled to the patent.

In Equity.
*Maynadier & Beach*, for complainant.
*George S. Boutwell*, for defendant.

CARPENTER, J. This is a bill in equity, brought under section 4915 of the Revised Statutes, and prays a decree which shall authorize the issue of letters patent to the complainant for his alleged invention of a a new and improved apparatus for coiling wire rod as it comes from the rolls of a rolling-mill. He describes his invention, in the seventh claim of his application, as follows:

"The combination, with a rod-coiling receptacle or reel, of a spider or lifting plate mounted on a central shaft, which is supported and reciprocatively movable within the reel-supporting shaft, and provided with means for elevating said central shaft and plate, substantially as and for the purpose set forth."

For the apparatus here in dispute application for letters patent was made by the respondent June 24, 1886, and by the complainant June 26, 1886; and, after proceedings in interference, a patent was issued to the respondent, numbered 416,940, under date of December 10, 1889. I am satisfied on the evidence, and it is indeed practically admitted, that the invention in question, which need not, for the present purpose, be more particularly described, was first embodied in a complete, material form in a drawing which is produced by the complainant, and marked

"Exhibit Daniels Drawing, 1." This drawing was made in March or April, 1879. Subsequently, two other drawings were made, containing modifications of the proposed machine, but not affecting the invention here in controversy; and finally, in 1886, a machine was constructed by the respondent, and put in successful operation. The question, as presented in the opinions of the successive tribunals of the patent-office which have passed on this question, was as to which of the parties is entitled to priority in the invention of the device which was embodied in the three drawings to which I have referred. On reading the whole testimony in the case, I have come to the conclusion that the evidence on behalf of each party, if it will support any conclusion, can support only the conclusion that the party on whose behalf it was presented is the sole and only inventor, and that the other party never at any time made the invention, in the sense of the patent law. The only question, in short, raised by the testimony, as I regard it, is the question who was the author of the drawings. At the time the drawings were made, the respondent was the general superintendent of the works of the Washburn & Moen Manufacturing Company of Worcester, and the complainant was in the employ of the same company in a capacity subordinate to the respondent. The drawings were made by the complainant. As to the first of them he testifies:

"I went to Mr. Morgan, and showed him my plan of a discharging platform. He told me to go ahead, and make a drawing of a reel having a platform in accordance with my plan."

As to the same drawing, the respondent testifies:

"In the spring—I think, in March, 1879—I gave directions to Mr. F. H. Daniels to make drawings for a reel with a lifting platform, operated by a hydraulic cylinder and piston.   *   *   *   Such drawings were made under my direction, supervision, and chiefly in accordance with my design." "I ordered it made, and gave instructions in its design and details." "Mr. Daniels suggested the combination of the two hydraulic lifting cylinders, to be supplied through one pipe and valve; and   *   *   *   I adopted his suggestion, which was the only part of the details which was not suggested and designed by myself."

Turning now to the testimony as to what had preceded the preparation of this drawing, it appears on the one hand that the complainant, in January and February, 1878, had in mind a plan for a reel with a discharging device consisting of a spider or fork actuated from an overhead track, and that he made a sketch of this plan, which is not produced; that in July, 1878, he "devised an automatic reel, having a discharging platform," operated by foot-power, and made sketches of the proposed apparatus, which have disappeared, and as to the construction of which there is no satisfactory evidence except his own statement; that in November, 1878, and thence to February, 1879, he made three sketches, which are produced, and which show a reel with a platform elevated by a lever actuated by hydraulic power, and also a platform and reel with concentric shafts, and devised in one case to raise the platform, and in the other case to lower the reel, so that the coil of wire may be removed. On the

side of the respondent, it appears that in October, 1878, Daniel C. Stover showed to the respondent a model of a discharging device which he had invented, "consisting of a disk attached to a shaft extending through the axis of the reel, which could be pushed forward by the action of a cam, effecting the discharge of the coil," and that the respondent thereupon said to Stover that he could use that discharging device in connection with a reel which he had invented, and of which he showed a model.

It appears to me that the above recitals are all well supported by the evidence, and can admit of no doubt; and they are, so far as I can see, the only facts having any material bearing on the authorship of the first complete drawing of this invention. The complainant, on the issue here tendered, assumes the burden of proof, and must, I think, as the evidence stands, maintain by a clear and undoubted preponderance of proof that he is the sole author of that drawing. I am entirely satisfied that he has maintained this proposition. He had long before had under consideration a device for discharging the coil from the reel, and had eight months before made the sketches which show the substance of the invention which was there embodied. On the other hand, the respondent, before the making of the drawings, according to his own statement, had done nothing, except to entertain the casual thought that the disk attached to a shaft concentric with that of the reel might be used to discharge the coil. I have no doubt that the origin of the first drawing was precisely as described by complainant in his answer to interrogatory 27 as above quoted. The respondent insists that an inference contrary to the truth of the complainant's claim is to be drawn from the fact that on several specified occasions he neglected to set up the claim that he was the inventor of the device in question. I shall not go over the testimony on these points, and shall only say that I see no evidence that there was any time when either the complainant or the respondent, if conscious that he was the inventor, would have felt called on to assert his rights. It does not appear that either of them ever claimed to be the inventor until he applied for a patent, except so far as there was a constant tacit claim and admission between the two men in accordance with what both knew to be the fact; and, even in their own minds, I am by no means satisfied that there was a concurrence of thought on this question. The respondent's counsel, speaking in his brief of the final drawing made by the complainant, and from which the machine was built, uses this language:

"The drawing was made while Morgan was in charge of the works, and, by a necessary presumption of law, it was made under his direction; and, in the absence of a contemporaneous claim on the part of Daniels, the conclusion must be accepted that, if the drawing represented new and patentable devices, those devices were the property of Morgan."

It is not difficult to suppose that the respondent has held the same view of the relative rights of himself and those who were, like himself, but subordinate to himself, servants of the company. If he did hold that opinion, seeing that the drawing which showed the invention was prepared by his order, and that the draughtsman made no claim as to the

authorship, he would doubtless feel that the invention was his own, and that he might lawfully so affirm both in his application for a patent and in his subsequent testimony. A decree will be made, authorizing the issue of a patent to the complainant as prayed.